# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 02-1814

LONNIE A. OVERTON,                                             APPELLANT,

    V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS,                               APPELLEE.

Before GREENE, *Chief Judge*, and KASOLD, HAGEL, MOORMAN,
LANCE, DAVIS, and SCHOELEN, *Judges.*

## O R D E R

During the internal circulation of the panel decision in this matter, three judges requested full-Court consideration. *See* the Court's Internal Operating Procedures ¶ V(b)(5).

On consideration of the foregoing, and it appearing that there is no majority in favor of the request for full-Court consideration, it is

ORDERED that full-Court consideration is DENIED.

DATED:      October 27, 2006          PER CURIAM.

KASOLD, *Judge*, concurring: I write briefly to note that Judge Hagel's well-written dissent regarding section 5103(a) notice fails to take into consideration the fact that section 5103(a) is concerned with notice preceding the first decision on a claim, *see* 38 U.S.C. § 5103(a) (notice is to be provided "[u]pon receipt of a complete or substantially complete application"); *see also Pelegrini v. Principi*, 18 Vet.App. 112, 119-20 (2004) (concluding based on legislative and regulatory history that section 5103(a) notice was to be given prior to the first decision on a claim). This notice requirement was intended to inform claimants up-front, rather than in a "piecemeal fashion," of the evidence necessary to prove the claim and to facilitate "'expedited decisionmaking' and 'higher satisfaction in the process.'" *Dingess v. Nicholson*, 19 Vet.App. 473, 487 (2006) (quoting 146 CONG. REC. S9212 (Sept. 25, 2000) (comment of Sen. Rockefeller)).

In contrast, the Court reviews final Board decisions, which are rendered only after application of a panoply of additional procedural requirements designed to secure a complete and correct decision from the Board. *See Dingess*, 19 Vet.App. at 490; *see also* 38 U.S.C. §§ 5103A, 7105(d); 38 C.F.R. § 3.103(b) (2006). Accordingly, any focus on section 5103(a) notice error would be incomplete without consideration of these other procedural safeguards, and a failure to consider them would eviscerate the requirement that we take into consideration the rule of prejudicial error as it

applies to a section 5103(a) notice error. *See Dingess*, 19 Vet.App. at 490; *see also* 38 U.S.C. § 7261(b)(2) (Court shall take due account of the rule of prejudicial error); *Mayfield v. Nicholson*, 444 F.3d 1328, 1337 (Fed. Cir. 2006) [hereinafter *Mayfield II*]; *Conway v. Principi*, 353 F.3d 1369, 1374-75 (Fed. Cir. 2004). As demonstrated in *Overton*, this review does not require factfinding by the Court in the first instance, as the Board itself made factual findings that the duty to notify had been satisfied. *See Overton v. Nicholson*, __ Vet.App. __, __, No. 02-1814, slip op. at 6, 2006 WL 2715036, at *4 (Sept. 22, 2006).

Moreover, the Secretary has a statutory duty to provide section 5103(a) notice (as well as to ensure compliance with statutory procedural requirements applicable after the first decision on a claim), and there is no basis for concluding that the Court in any way relieves the Secretary of his statutory obligations simply because the Court finds that a final decision of the Board does not contain any prejudicial error. Indeed, we do not have the authority to relieve the Secretary of his duties, as that prerogative rests with the President or with Congress. Moreover, I cannot join in an implicit suggestion that the Secretary will disregard intentionally his section 5103(a) notice duty.

Appellants throughout the appellate judicial landscape generally have the burden of demonstrating error and persuading the Court that such error is prejudicial. *See, e.g., Palmer v. Hoffman*, 318 U.S. 109 (1943); *see also Mayfield v. Nicholson*, 19 Vet.App. 103, 116-19 (2003) (generally discussing burdens on appeal), *rev'd on other grounds*, *Mayfield II*, *supra*. This Court routinely has held the same. *See, e.g., Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (appellant has burden of demonstrating error); *Marciniak v. Brown*, 10 Vet.App. 198, 201 (1997) (appellant has burden alleging prejudice with specificity); *Burger v. Brown*, 10 Vet.App. 166, 169 (1997) (appellant has burden of persuasion on appeals); *see also Mayfield*, 19 Vet.App. at 111-20 (addressing the allocation of burdens on appeal).

Moreover, although *Pelegrini*, *supra*, involved a case in which the panel could not speculate regarding error, *Overton* is simply not such a case. In *Overton*, the Court was able to determine that Mr. Overton had a meaningful opportunity to participate in the proceedings. *See Overton*, __ Vet.App. at __, No. 02-1814, slip op. at 8, 16-17, 2006 WL 2715036, at *6, 12. Similarly, assuming arguendo that *Quartuccio v. Principi*, 16 Vet.App. 183 (2002), and *Charles v. Principi*, 16 Vet.App. 370 (2002), considered the rule of prejudicial error, these cases certainly do not stand for the proposition that all section 5103(a) notice errors are prejudicial.

Thus, *Overton* is not inconsistent with our prior cases. Moreover, although I agree that a case should be decided en banc to resolve issues of great importance, *see Mayfield v. Nicholson*, 19 Vet.App. 220, 221-22 (2005) (Kasold, J., concurring in denial of en banc consideration), the fact of the matter is the *Overton* panel is unanimous with regard to the application of the rule of prejudice, and a majority of the Court find no need for further resolution.

HAGEL, *Judge,* with whom DAVIS and SCHOELEN, *Judges*, join, dissenting: A matter is worthy of full-Court consideration if such consideration is "necessary to secure or maintain a uniformity of the Court's decisions or to resolve a question of exceptional importance." Court's

2

Internal Operating Procedure at V(a); *see* U.S. VET. APP. R. 35(c). *Overton* is the rare case that undeniably satisfies both prongs of the relevant standard. As a consequence, for the reasons provided below, I respectfully dissent from the decision not to refer that matter to a panel composed of the full Court.

The standard encompassed within the first prong of Internal Operating Procedure V(a) is satisfied because the Court's decision in *Overton v. Nicholson*, __ Vet.App. __, No. 02-1814 (Sept. 22, 2006), is inconsistent with *Pelegrini v. Principi*, where a panel of this Court, having found Board error because the appellant had received deficient notice under 38 U.S.C. § 5103(a), refused to find such error nonprejudicial because to do so "would require pure speculation . . . that, once given the notice to which he is entitled, the appellant definitely could not provide or lead VA to obtain the information or evidence necessary to substantiate his service-connection claim." 18 Vet.App. 112, 121 (2004). *Pelegrini* was not novel in that regard–it merely extended precedential value to what was already the Court's standard practice following the decision of the United States Court of Appeals for the Federal Circuit (Federal Circuit) in *Conway v. Principi*, 353 F.3d 1369 (Fed. Cir. 2004).[1] That practice came to an abrupt end only in response to this Court's decision in *Mayfield v. Nicholson*, 19 Vet.App. 103 (2005), which was later reversed by the Federal Circuit, 444 F.3d 1328 (Fed. Cir. 2006). *Overton*, like this Court's decision in *Mayfield* before it, not only conflicts with *Pelegrini*, but alters significantly the manner in which this Court would reach a determination regarding prejudice or a lack thereof after finding (or presuming) a duty-to-notify error under section 5103(a).[2]

---

[1] *See, e.g., Meranda v. Nicholson*, No. 02-168, 2005 U.S. Vet. App. LEXIS 396 (May 19, 2005); *Mills v. Nicholson*, No. 04-238, 2005 U.S. Vet. App. LEXIS 343 (Apr. 22, 2005); *Kelly v. Nicholson*, No. 03-512, 2005 U.S. Vet. App. LEXIS 217 (Apr. 14, 2005); *Sisley v. Nicholson*, No. 04-0109, 2005 U.S. Vet. App. LEXIS 126 (Mar. 22, 2005); *Taylor v. Nicholson*, No. 04-141, 2005 U.S. Vet. App. LEXIS 193 (Mar. 18, 2005); *Perez v. Nicholson*, No. 03-1359, 2005 U.S. Vet. App. LEXIS 269 (Mar. 17, 2005); *Effler v. Nicholson*, No. 03-1979, 2005 U.S. Vet. App. LEXIS 71 (Feb. 24, 2005); *Negron-Ortiz v. Principi*, No. 02-0777, 2005 U.S. Vet. App. LEXIS 355 (Jan. 16, 2005); *Kolde v. Principi*, No. 03-419, 2004 U.S. Vet. App. LEXIS 908 (Dec. 23, 2004); *Dumana v. Principi*, No. 03-1205, 2004 U.S. Vet. App. LEXIS 733 (Nov. 17, 2004); *Ferguson v. Principi*, No. 02-1492, 2004 U.S. Vet. App. LEXIS 552 (Aug. 27, 2004); *Forgione v. Principi*, No. 02-103, 2004 U.S. Vet. App. LEXIS 928 (July 20, 2004); *Craft v. Principi*, No. 02-0546, 2004 U.S. Vet. App. LEXIS 132 (Mar. 15, 2004); *Hagan v. Principi*, No. 02-753, 2004 U.S. Vet. App. LEXIS 109 (Jan. 22, 2004).

[2] *Overton* is also inconsistent with the Court's decision in *Charles v. Principi*, 16 Vet.App. 370, 373-74 (2002), as interpreted in *Pelegrini*, which held that the Board erred by not adequately discussing the section 5103(a) duty to notify. In *Pelegrini*, the Court held that "under 38 U.S.C. § 7104(d)(1) and *Charles*, 16 Vet.App. at 374, it is the Board's responsibility to include in its statement of reasons or bases an 'adequate' discussion of the duty to notify and to specify whether and, if so, how documents referred to by the Board 'or any other document in the record satisfied that requirement.'" 18 Vet.App. at 120. Without the Board's discussion of how particular documents satisfy the duty to notify, the Court could never assess the adequacy of notice in accord with *Mayfield*. *See* 444 F.3d 1328, 1335 (Fed. Cir. 2006) (holding that whether a particular document of record is sufficient to satisfy the duty to notify is "a substantially factual determination" that must be made by the Board in the first instance). Unquestionably, there are some cases where the duty to notify need not be discussed, for example, where the facts as averred by a claimant could never result in the award of benefits. *See Valiao v. Principi*, 17 Vet.App. 229, 232 (2003). *Overton* is not such a case, and the Court's implication that the Board need not have even discussed the duty to notify at all in this case is inconsistent with *Charles*, as interpreted in *Pelegrini*. *See Overton*, __ Vet.App. __, slip op. at 12.

The "exceptional importance" standard embodied in the second prong of Internal Operating Procedure V(a) has also been met. The Court in *Overton* discussed in detail the method by which this Court is to apply the rule of prejudicial error in the context of the Secretary's duty to notify, an issue that will impact the result reached by the Court in a large number of cases. Because the Veterans Claims Assistance Act of 2000 is one of the most significant pieces of legislation governing the adjudication of claims for veterans benefits since the passage of the Veterans' Judicial Review Act, Pub. L. No. 100-687, § 402, 102 Stat. 4105, 4122 (1988), pronouncements regarding the Court's application of the rule of prejudicial error with respect to the notice provisions should have been made with the full and contemporaneous participation of all the Judges of this Court.

Because the sole issue that is the subject of the order from which I am dissenting is whether full court consideration of this case is warranted, I would normally end my dissent here. However, considering the key role of the Veterans Claims Assistance Act within the fabric of the VA adjudicatory scheme, any diminution of that statute's effect is deserving of at least some comment.

Both this Court's defunct decision in *Mayfield* and its decision in *Overton* represent stark and troubling departures from this Court's practice of vacating a Board decision and remanding a matter upon a finding that a notice error was committed. Although under 38 U.S.C. § 7261(b)(2), the Court bears an obligation to "take due account of the rule of prejudicial error," there is no requirement that the Court provide in its decisions a discussion as to how it has taken due account of the rule of prejudicial error. Indeed, prior to the Federal Circuit's decision in *Conway*, *supra*, it was common for the Court to find a notice error, vacate the Board decision at issue, and remand the matter without ever engaging in a discussion of how it had taken due account of the rule of prejudicial error.[3] *See e.g.*, *Quartuccio v. Principi*, 16 Vet.App. 183, 187-88 (2002) (vacating the Board decision on appeal and remanding the matter, without a discussion of 38 U.S.C. § 7261(b)(2), after finding a duty-to-notify error). That, of course, does not mean that the Court, in all of those cases, failed to take due account of the rule, as is unambiguously required by the statute in every case. What it must mean, then, is that the Court could not find those notice errors to be nonprejudicial. Were that not the case, those Board decisions would not have been vacated on the premise that the Secretary had failed to comply with the duty to notify.

By way of history, in this Court's single-judge decision in *Conway v. Principi*, after finding an error with respect to the Secretary's compliance with the duty to notify, the Court concluded as follows: "It is difficult to discern what additional guidance VA could have provided to the veteran regarding what further evidence he should submit to substantiate his claim. While the Court will not

---

[3] *See*, *e.g.*, *Labier v. Principi*, No. 02-1654, 2004 U.S. App. Vet. Claims LEXIS 2 (Jan. 2, 2004); *Aitchison v. Principi*, No. 02-1666, 2003 U.S. App. Vet. Claims LEXIS 998 (Dec. 10, 2003);*Garcia v. Principi*, No. 01-0632, 2003 U.S. App. Vet. Claims LEXIS 854 (Nov. 12, 2003); *Davies v. Principi*, No. 02-2433, 2003 U.S. App. Vet. Claims LEXIS 645 (Aug. 11, 2003); *Whitlatch v. Principi*, No. 02-376, 2003 U.S. App. Vet. Claims LEXIS 220 (Mar. 25, 2003); *Montemayor v. Principi*, No. 01-1948, 2003 U.S. App. Vet. Claims LEXIS 462 (Feb. 11, 2003); *Morse v. Principi*, No. 01-1185, 2003 U.S. App. Vet. Claims LEXIS 477 (Feb. 10, 2003); *Rentz v. Principi*, No. 01-1566, 2003 U.S. App. Vet. Claims LEXIS 230 (Jan. 15, 2003); *Francis v. Principi*, No. 01-920, 2002 U.S. App. Vet. Claims LEXIS 963 (Oct. 22, 2002).

attempt in this case to address the application of the harmless error doctrine, the time may be approaching to do so." *Conway v. Principi*, 2002 U.S. App. Vet. Claims LEXIS 1073 (Nov. 20, 2002). In reversing this Court's decision, the Federal Circuit held that "[a]lthough the Veteran's Court unquestionably ***does not have an obligation to expressly discuss the rule of prejudicial error*** in each and every opinion, . . . what it cannot do is precisely what it has done here when it flatly refused to 'take due account of the rule of prejudicial error.'" *Conway*, 353 F.3d at 1373 (emphasis added).

Following the Federal Circuit's decision in *Conway*, this Court's practice changed in procedure but not in substance. As a matter of fact, in the 18 months between the issuance of the Federal Circuit's decision in *Conway* and this Court's decision in *Mayfield*, this Court issued well in excess of 100 decisions and orders in which it found an error with respect to the duty to notify, vacated the Board decision at issue, and remanded the matter to the Board. In all of those decisions and orders, including the aforementioned precedential opinion in *Pelegrini*, the Court refused to engage in the "pure speculation" that would have been required to conclude that a notice error did not prejudice the claimant. 18 Vet.App. at 121. In *Overton*, as in *Mayfield* before it, the Court casts aside a myriad of its sound decisions and consistent practice without even recognizing the magnitude of its action.

I have a number of more global concerns with the Court's decision in *Overton*. Chief among them is that this Court has yet to establish a generally applicable framework for applying section 7261(b)(2)'s mandate to take due account of the rule of prejudicial error. Instead, in its myopic view, the Court in *Overton* announces a specialized "meaningful-participation" prejudice test designed just for dealing with duty-to-notify errors. To make matters worse, the Court, in its zeal to set forth that test, predicates this new analysis, not on a finding of error, but on an assumption of such. *See Overton*, __ Vet.App. __, slip op. at 7 ("[I]n order to determine whether the Board's error was prejudicial, we will assume the notice error, as pled by Mr. Overton."); *id.*, __ Vet.App. __, slip op. at 14 ("Thus, presuming error, we now must . . . decide if that error . . . was prejudicial."). Indeed, the Court, as it did in its decision in *Mayfield*, explicitly refuses to render a determination as to whether the Board actually erred. *See id*. In fact, rather than confront the question of whether the Court can even assess the adequacy of the notice in the case, the Court sidesteps that question as well in order to assume error and reach the question of prejudice. *See id.*, __ Vet.App. __, slip op. at 7 ("Thus, on the facts presented by this case, we do not answer the question of whether the Court could find no notice error based on a single letter where the Board has previously found compliant notice by referring to a . . . notice letter in combination with other documents not specifically designed to provide section 5103(a) notice.").

Another of my concerns is that the Court, while establishing a meaningful-participation prejudice test that requires it to engage in factfinding de novo, has failed to analyze its authority, if any, to engage in such factfinding, even in the limited prejudicial-error context. Apart from the fact that this type of de novo factfinding effectively shifts the burden of ensuring compliance with the duty to notify onto this Court and off of the Board, it is questionable that we can even engage in such an exercise because it is well established that we are generally prohibited from finding facts in the

first instance. *See Hensley v. West*, 212 F.3d 1255, 1263 (Fed. Cir. 2000) ("[A]ppellate tribunals are not appropriate fora for initial fact finding."); *First Interstate Bank v. United States*, 61 F.3d 876, 882 (Fed. Cir.1995) ("It would be a distortion of our role to draw conclusions about the facts, as the government asks, rather than having the trial court make its own findings in light of the 'actual knowledge' standard that we have endorsed."). In fact, the Federal Circuit, in *Conway*, noted that de novo factfinding by this Court in the prejudicial-error context was a potential problem. *See Conway*, 353 F.3d at 1375 n. 4 ("In cases in which the Board itself did not make findings . . . on . . . facts permitting a conclusion of lack of prejudice from improper notice, it is questionable whether the Veteran's Court could arrive at the factual conclusion regarding prejudice in the first instance."). Whether or not there exists, or should exist, a special exception for de novo factfinding in the prejudicial-error context is a matter far too important to be glossed over by the Court.

Even more troubling is that the Court's decision in *Overton* sidesteps the Federal Circuit's decision in *Mayfield*, albeit under the rubric of applying the rule of prejudicial error. In *Mayfield*, the Federal Circuit held that VA's duty to notify "is not satisfied by various post-decisional communications from which a claimant might have been able to infer what evidence the VA found lacking in the claimant's presentation." *Mayfield*, 444 F.3d at 1333. In support of that holding, the Federal Circuit reasoned that notice under the Veterans Claims Assistance Act

> is required to have different contents from the post-decisional notices, and it is designed for different purposes–to ensure that the claimant's case is presented to the initial decisionmaker with whatever support is available and to ensure that the claimant understands what evidence will be obtained by the VA and what evidence must be provided by the claimant.

*Id.* In *Overton*, this Court effectively seeks to nullify the Federal Circuit's holding by pronouncing it acceptable to consider documents that the Federal Circuit has apprised us cannot possible comply with the statute in determining whether a claimant was afforded "an opportunity to meaningfully participate in the adjudication of his . . . claim." *Overton*, __ Vet.App. __, slip op. at 19. This undoubtedly undermines the Federal Circuit's *Mayfield* decision because if postdecisional and other noncomplying documents[4], in this Court's opinion, reflect an opportunity for meaningful participation by the appellant, then it will never be of any consequence that the Board fails to abide by the Federal Circuit's decision. Under the cloak of prejudicial error, the majority has, in effect, done what it stated it had no authority to do–assess whether postdecisional documents, issued for a different purpose, provide the information VA was required to provide under section 5103(a). The Court has gone through the back door to accomplish what it could not do through the front door.

---

[4] For example, VA regional office decisions, Statements of the Case, Supplemental Statements of the Case, and prior Board and Court decisions are the types of postdecisional documents that the Court cannot rely on to assess the adequacy of section 5103(a) notice, regardless of whether they are issued before or after any readjudication after attempted section 5103(a) compliance. *See Mayfield*, 444 F.3d at 1333 (holding that section 5103(a) notice "is required to have different contents from the post-decisional notices, and it is designed for different purposes"), 1334 (holding that postdecisional documents may not be considered to satisfy section 5103(a), even after providing a claimant new section 5103(a) notice and readjudicating the claim).

After *Overton*, there is no reason for the Board not to rely on noncomplying documents if this Court will consider those documents in determining their impact upon a claimant's ability to meaningfully participate in the adjudication of a claim before VA.

I have reserved for last the most serious of my concerns–that the Court's decision in *Overton* frustrates Congress' purpose in enacting section 5103(a) by de-emphasizing the need for VA compliance and for the Board to ensure that the Secretary is fulfilling his notice obligations. As the Federal Circuit in *Mayfield* aptly pointed out, in enacting section 5103(a), Congress envisioned "a deliberate act of notification" and not notification "through a combination of unrelated pre-and post-decisional communications" 444 F.3d at 1335. With *Overton*, the Court, under the rubric of applying the rule of prejudicial error, frustrates Congress' purpose in imposing upon the Secretary a duty to notify by allowing an amalgamation of noncomplying documents to wash away any error in the Secretary's compliance with a statutory obligation, so long as the Court is satisfied that its own nebulous "meaningful participation" standard has been satisfied. The effect of the Court's decision is that compliance with section 5103(a) now plays second fiddle to this Court's determination as to whether a claimant engaged in "meaningful participation" in the processing of the claim. As mentioned above, that was precisely the case in *Overton* itself, where the Court was entirely unconcerned with whether there was a notice error and, instead, directed its full attention to determining whether Mr. Overton, in its view, "meaningfully participated" in the process. *See Overton*, __ Vet.App. at __, slip op. at 7 ("[I]n order to determine whether the Board's error was prejudicial, we will assume the notice error, as pled by Mr. Overton."); __ Vet.App. at __, slip op. at 14 ("Thus, presuming error, we now must . . . decide if that error . . . was prejudicial.").

Although the statue imposes a burden on the Secretary, this Court has effectively lifted the burden off the Secretary and placed it squarely on the shoulders of the class of individuals whom the statute was enacted to protect– veterans-benefits claimants. After *Overton*, it is the claimant who must plead "with considerable specificity" both how the notice was defective and what evidence the claimant would have provided or requested the Secretary to obtain had the Secretary fulfilled his notice obligations. *Id.*, __ Vet.App. __, slip op. at 9; *see also Pelegrini*, 18 Vet.App. at 121-22 ("Applying the outcome-based definition of prejudice that the Secretary proposes . . . to assess the effect of a lack of section 5103(a) / § 3.159(b)(1) notice would lead to an absurd result because the very purpose of requiring that a claimant whose claim is missing necessary evidence be notified of the information and evidence needed to substantiate the claim is so that the claimant and/or VA can produce that missing evidence."). In so doing, the Court not only backslides from years of solid decisionmaking, it begins to erode the very foundation of the duty to notify.